## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **GRANT WACHTELHAUSEN**, on behalf of himself and all others similarly situated, | ) ) ) | CASE NO. 2:20-cv-06234 |
| | ) | **Judge Sarah D. Morrison** |
| Plaintiff, | ) | **Magistrate Judge Chelsey M. Vascura** |
| | ) | |
| v. | ) | |
| | ) | **RENEWED JOINT MOTION FOR FAIR** |
| **CCBCC, INC.,** | ) | **LABOR STANDARDS ACT** |
| | ) | **SETTLEMENT APPROVAL AND** |
| Defendant. | ) | **DISMISSAL** |

## I.    INTRODUCTION

Representative Plaintiff Grant Wachtelhausen ("Representative Plaintiff") and Defendant CCBCC, Inc. ("Defendant") (collectively, the "Parties") respectfully move this Court to approve the proposed Fair Labor Standards Act ("FLSA") settlement reached by the Parties (the "Settlement"), as outlined in the attached Joint Stipulation of Settlement and Release (the "Settlement Agreement"), a copy of which, along with its Exhibits A through C, are attached as **Exhibit 1**. The proposed Settlement resolves bona fide disputes involving overtime compensation claims under the FLSA, 29 U.S.C. § 201, *et seq.*, and Ohio Revised Code ("O.R.C.") § 4111.03(D), as well as alleged violations of O.R.C. § 4113.15 and § 2307.60.

Representative Plaintiff filed this action as a collective action under the FLSA and as an Ohio class action under Fed. R. Civ. P. 23 whereby he alleged violations of the FLSA and Ohio law based on Defendant's alleged failure to pay him and others similarly situated for certain compensable work allegedly performed before their shifts and when returning from lunch, which he alleged resulted in underpayment of overtime. For settlement purposes only, the Parties agree that Representative Plaintiff and the other Eligible Settlement Participants (as defined in the Settlement Agreement) are similarly situated for purposes of 29 U.S.C. § 216(b) of the FLSA and

consent to Court-facilitated notice of the pendency of this action and the proposed Settlement thereof to the Eligible Settlement Participants. Eligible Settlement Participants include current and former Forklift Operators and Material Handlers employed by CCBCC at its Columbus facility who worked in the Warehouse operation at any point from December 4, 2017 to March 20, 2021. Eligible Settlement Participants are a group of 143 current and former hourly employees.[1]

If approved by the Court, the Settlement will provide written notice to all Eligible Settlement Participants as provided in the Settlement Agreement (the "Notice of Settlement"). Specifically, within <u>14 days</u> of the of the Effective Date,[2] Defendant shall provide the Settlement Administrator with an Excel chart listing the names, social security numbers, last known addresses, and dates of employment for the Eligible Settlement Participants during the Covered Period, as that information exists in Defendant's records.[3]

Within <u>20 days</u> of receipt of the list of Eligible Settlement Participants, the Settlement Administrator shall mail to all Eligible Settlement Participants the Notice of Settlement,[4] Claim Form,[5] and an enclosed, postage-paid return envelope.[6] Eligible Settlement Participants will have <u>90 days</u> from the date Notice of Settlement is initially mailed to join the Settlement by executing

---

[1] **Ex. 1**, Settlement Agreement at ¶ 1.

[2] *Id*. at ¶ 21 ("Effective Date" means the first day after the date on which the Court approves this Settlement, assuming no appeals are filed. In the event any timely appeals of the Settlement are filed, the Effective Date shall be the first day following the exhaustion of any such appeals, and a resolution approving the Settlement.)

[3] *Id*. at ¶ 38.

[4] *Id*. at Exhibit A.

[5] *Id*. at Exhibit B.

[6] Settlement Agreement at ¶ 40.

and returning a Claim Form.[7]

The Parties respectfully submit that the proposed Settlement is fair, reasonable, adequate, and in the best interests of Representative Plaintiff and all other Eligible Settlement Participants who elect to participate in the Settlement by signing and timely returning a Claim Form ("Opt-In Party Plaintiffs"); and that it satisfies the criteria for approval under § 216(b) of the FLSA. The Settlement was achieved during arm's-length negotiations conducted by experienced counsel. If approved by the Court, the Settlement will make settlement payments available to the Representative Plaintiff and Opt-In Party Plaintiffs.

The Settlement documents submitted for approval and entry by the Court consist of the following:

**Exhibit 1**:    Joint Stipulation of Settlement and Release and its Exhibits (Exhibits A (Notice of Settlement), B (Claim Form), and C (Representative Plaintiff's Settlement Agreement and General Release));

**Exhibit 2**:    Declaration of Plaintiffs' Counsel Robi J. Baishnab; and

**Exhibit 3**:    Proposed Order Granting Approval of FLSA Settlement.

The following sections explain the nature of the action, the negotiations, the principal terms of the Settlement and the propriety of approving the Settlement and the proposed distributions of Settlement proceeds.

## II.    <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

### A.    <u>*The Action.*</u>

On December 4, 2020, Representative Plaintiff commenced the action, *Wachtelhausen v. CCBCC, Inc.*, by filing a Complaint in the United States District Court for the Southern District of

---

[7] *Id*. at ¶ 45.

Ohio ("the Action"). Representative Plaintiff asserted claims on behalf of himself and other individuals alleged to be similarly situated under the FLSA, and alleged unpaid overtime, additional statutory damages, attorneys' fees, costs, expenses, and interest. Specifically, Representative Plaintiff alleged that Defendant did not pay him and others similarly situated for all compensable work, including certain pre-shift work and alleged compensable work that he alleged cut into their unpaid meal breaks.[8]

On December 29, 2020, Plaintiff filed a First Amended Complaint.[9] On December 29, 2020, the Parties filed their Proposed Stipulation and Proposed Order for Conditional Certification, Notice, Due Diligence Exchange and Mediation, which was approved on January 6, 2021.[10] Defendant filed its Answer on February 16, 2021, in which it denied, and continues to deny, any liability or wrongdoing of any kind.[11]

### B. *Negotiation of the Settlement.*

In preparation for mediation, the Parties engaged in an informal yet comprehensive exchange of information regarding Representative Plaintiff's claims and Defendant's defenses to such claims. Defendant provided relevant wage and hour records for the Representative Plaintiff and the Eligible Settlement Participants. Documents included data concerning badge swipe times, meal break periods, warehouse entrance locations, class-wide paystubs, class-wide Excel timekeeping reports, and a collective bargaining agreement. The Parties engaged in extensive

---

[8] ECF No. 1; and *attached* **Ex. 2**, Baishnab Decl. at ¶ 13.

[9] ECF No. 5.

[10] ECF Nos. 6 and 8.

[11] ECF No. 14; Baishnab Decl. at ¶ 15.

factual and legal discussion and correspondence regarding Representative Plaintiff's legal theories, the propriety of collective action treatment, and Defendant's defenses.[12]

Plaintiffs' Counsel (as defined in the Settlement Agreement) analyzed the documents provided by Defendant, and engaged a PhD-level economist (the "Economist") to review the timekeeping and pay records to calculate the alleged unpaid overtime claimed by Representative Plaintiff and the Eligible Settlement Participants. The Economist's model, which included a toggle to manually enter estimated unpaid minutes worked per day, was shared, analyzed, updated and revised pursuant to negotiation discussions. Plaintiffs' Counsel also continually conferred with Representative Plaintiff throughout the process, including assessing Defendant's various allegations and defenses, and even collaborating to create a map with a key of relevant locations, such as badge readers, charging stations, break room, and estimated distances. Defendant likewise shared its own calculations and data analysis, including analysis of door badge swipes, through the course of settlement negotiations.[13]

The Parties scheduled private mediation for April 22, 2021 with Mediator Jason R. Bristol.[14] The Parties each submitted confidential mediation statements and exhibits in preparation for the mediation. However, the Parties continued engaging in extensive settlement negotiations amongst themselves until they reached an agreement to settle the action on the terms set forth in the Settlement Agreement. Mediation was therefore unnecessary, which had the benefit of avoiding additional costs. With just one business day before mediation, the Parties reached the proposed Settlement in this matter after extensive research, data exchanges, legal debates,

---

[12] Baishnab Decl. at ¶ 16.

[13] *Id.* at ¶ 17.

[14] ECF No. 17.

discussions and correspondence, and after good faith bargaining. Their Joint Settlement Notice was filed on April 30, 2021.[15] On June 15, 2021, the Parties' filed their Joint Motion for Fair Labor Standards Act Settlement Approval and Dismissal.[16]

Pursuant to the Court's July 1, 2021 Order,[17] Plaintiff filed a Supplement to the Parties' Joint Motion.[18] On August 26, 2021, the Court denied the Parties' Joint Motion without prejudice. In its Order, the Court held that the proposed Settlement does resolve a *bona fide* dispute under the FLSA, and "that the Settlement is not an attempt to "negotiate around" the FLSA's mandatory requirements of compensating employees for overtime."[19] The Court held that "[t]he fairness factors therefore weigh in favor of approval;" specifically that "[n]either fraud nor collusion are present," that "Settlement was reached via arm's length negotiations among experienced opposing counsel," and that "the complexity, expense, and likely duration of the litigation" favor approval.[20] However, the Court held that attorney's fees requested were not reasonable, and denied the Joint Motion without prejudice.[21]

The Parties now file their Renewed Joint Motion for Fair Labor Standards Act Settlement Approval and Dismissal. As outlined in their original Joint Motion, and as found by the Court, Settlement resolves a *bona fide* dispute. The Parties have come to a reasonable, fair, and adequate

---

[15] ECF No. 19; Baishnab Decl. at ¶ 18.

[16] ECF No. 23.

[17] ECF No. 24.

[18] ECF No. 25.

[19] *Id*. at PAGEID #: 181.

[20] *Id.* PAGEID #: 182-183.

[21] *Id*. at PAGEID #: 187.

agreement to resolve this matter, which includes payment of fair and reasonable class payments, service award, attorney's fees, and reimbursement of costs. The Parties agree that the Settlement, subject to Court approval, will fully and finally settle and resolve this Action and result in the dismissal of this lawsuit, with prejudice.[22]

### C. *The Settlement Terms.*

If approved by the Court, the Settlement will cover Representative Plaintiff and all of the Opt-In Party Plaintiffs.[23] The Global Settlement Fund of **$225,000.00** is the total gross amount of funds available for payment to Plaintiffs (defined in the Settlement Agreement as Representative Plaintiff and the Opt-In Party Plaintiffs) for claims related to alleged unpaid and/or untimely payment of wages and other compensation, including alleged unpaid overtime, liquidated damages, including Plaintiffs' Counsel's attorney fees and costs, Service Award, penalties, and any other monetary claims related to the payment of wages. The Global Settlement Fund does not include the Settlement Administrator's costs, the Mediator's costs, or Defendant's share of the applicable employer tax withholdings.[24]

Before the mediation, Plaintiffs' Counsel spent a significant amount of time doing an expected value calculation, using a decision tree software called TreeAge Pro©. In this calculation, Plaintiffs' Counsel analyzed each potential risk of loss (i.e., decertification, summary judgment, good-faith, willfulness) and assigned a probability value to each potential risk. The decision tree software compounded each of these probability values and applied those values to the damages

---

[22] Baishnab Decl. at ¶ 19; Settlement Agreement at pgs. 2-3.

[23] Settlement Agreement at ¶¶ 2 and 10.

[24] Settlement Agreement at ¶ 8; Baishnab Decl. at ¶ 20.

model. This exercise allowed Plaintiffs' Counsel to fully appreciate the entire risk picture and economic value of the case collectively.[25]

The benefit to Eligible Settlement Participants can be viewed in multiple ways. The total settlement amount of $225,000.00 equals approximately 9 minutes of unpaid time per day, for 100% of the alleged unpaid overtime, plus 26% liquidated at three years or 85% liquidated damages at two years. Assuming 100% participation, the approximate Net Settlement Fund divided by 143 Eligible Settlement Participants would result in an average payment of approximately more than $939 per individual. Further, the total settlement amount reflects nearly twice Plaintiffs' counsel's calculated expected value in this case according to the TreeAge Pro software.[26]

      1.  **Settlement Notice.**

As provided in the Settlement Agreement, each of the Eligible Settlement Participants shall have 90-days from the date Notice of Settlement is initially mailed (but if any mailed Notice of Settlement is returned as undeliverable, the Eligible Settlement Participant shall have 45-days from any re-mailing of the Notice of Settlement) to submit a Claim Form.[27]

      2.  **Allocation of the Settlement Fund.**

The amount approved by the Court for Representative Plaintiff's Service Award, and Plaintiffs' Counsel's attorneys' fees and costs, shall be deducted from the Global Settlement Fund to obtain a "Net Settlement Fund." In accordance with the Settlement Agreement, this Net

---

[25] Baishnab Decl. at ¶ 21.

[26] The actual calculated expected value can be submitted to the Court for in camera review, if the Court so directs. *Id*. at ¶ 22.

[27] Settlement Agreement at ¶¶ 19 and 43.

Settlement Fund will be distributed to Opt-In Party Plaintiffs, as calculated by the Settlement Administrator, which will reflect the Opt-In Party Plaintiff's *pro rata* share of the Net Settlement Fund based on the number of workweeks worked by each of the Eligible Settlement Participants in the Columbus warehouse during the Covered Period in comparison to the total number of workweeks worked by all Eligible Settlement Participants during the Covered Period.[28]

### 3. **Service Award.**

If approved by the Court, a Service Award in the amount of **$2,500.00** is to be deducted from the Global Settlement Fund and paid to Representative Plaintiff for his involvement in commencing the claims represented in this Action, in helping to bring about this collective outcome, and in exchange for a general release. Defendant does not oppose the requested Service Award.[29]

### 4. **Attorneys' Fees and Costs.**

If approved by the Court, **$69,836.96**, which represents less than one-third of the Global Settlement Fund, shall be distributed to Plaintiffs' Counsel as attorneys' fees. Settlement also includes reimbursement of Plaintiffs' Counsel's costs incurred in pursuing the Action, which presently total **$3,818.05**. Plaintiffs' Counsel will not receive any fees incurred in effectuating notice and settlement, including Participants fielding inquiries from Eligible Settlement and working with the Settlement Administrator. Defendant does not oppose the requested fees or costs outlined in this paragraph.[30]

---

[28] *Id*. at ¶¶ 9 and 53.

[29] Settlement Agreement at ¶¶ 17 and 30; Exhibit C to Settlement Agreement; Baishnab Decl. at ¶ 23.

[30] Baishnab Decl. at ¶ 24.

In exchange for payment and subject to Court approval, the Action will be dismissed with prejudice. Attached as Exhibits A and B to the submitted Settlement Agreement, are the proposed Notice of Settlement and Claim Form, informing Eligible Settlement Participants of the Settlement and providing them the means to join. The Notice will be mailed to the Eligible Settlement Participants at their last known home addresses according to records maintained by Defendant. Eligible Settlement Participants will also receive a reminder notice to maximize participation rates. The Opt-In Party Plaintiffs will participate in the Settlement and their claims will be released as defined in the Settlement Agreement and Notice of Settlement. The released claims as to Representative Plaintiff are defined in the separate Settlement Agreement and General Release, attached to the Settlement Agreement as Exhibit C.[31]

## III.   THE COURT SHOULD APPROVE THE FLSA CLASS MEMBERS' SETTLEMENT

Settlement of claims made pursuant to § 216(b) of the FLSA are subject to approval by the Court. As mentioned above, the Court held that "[t]he fairness factors therefore weigh in favor of approval," but that attorney's fees requested were not reasonable.[32] As shown in the attached Declaration of Robi J. Baishnab, and as explained below, the Court should hold that requested fees are reasonable, grant this Renewed Joint Motion, and approve the Settlement.

### A.   *The Settlement Distributions Are Fair, Reasonable, and Adequate.*

When scrutinizing an FLSA collective action settlement, "a court must ensure that the

---

[31] Settlement Agreement at ¶¶ 11-13, 18-19, 30, and 32.

[32] ECF No. 26 at PAGEID #: 182-183, 187. *See also* ECF No. 23 at PAGEID #: 102-106.

distribution of the Settlement proceeds is equitable."[33] All components of the proposed distribution are proper and reasonable, and the Settlement as a whole is fair, reasonable, and adequate for the Representative Plaintiff and Opt-In Party Plaintiffs.

1.   **The Payments to Class Members Are Reasonable and Adequate.**

The Settlement confers substantial benefits upon Representative Plaintiff and Opt-In Party Plaintiffs. For example, Defendant's Counsel produced wage and hour data for the Eligible Settlement Participants. Through analysis by Plaintiffs' Counsel and the Economist, a damages model was developed, reflecting alleged unpaid overtime for the entire class. The model was shared, discussed, and adjusted throughout the process.[34]

The Settlement Administrator will calculate the Eligible Settlement Participant's respective *pro rata* share of the Net Settlement Fund based on the number of workweeks worked by each of the Eligible Settlement Participants during the Covered Period at the Columbus warehouse in comparison to the total number of workweeks worked by all Eligible Settlement Participants during the Covered Period.

The total settlement amount of $225,000.00 equals approximately 9 minutes of unpaid time per day, for 100% of the alleged unpaid overtime, plus 26% liquidated at three years and 85% liquidated damages at two years. Assuming 100% participation, settlement would result in an average payment of approximately more than $939 per individual. Additionally, the total settlement amount reflects nearly twice the calculated expected value per Plaintiffs' Counsel's use of the TreeAge Pro software in this case. Plaintiffs' Counsel believes that this recovery is not just

---

[33] *Crawford v. Lexington-Fayette Urban Cty. Gov't*, No. 06-299-JBC, 2008 U.S. Dist. LEXIS 90070, at *31 E.D. Ky. Oct. 23, 2008) (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999)).

[34] Baishnab Decl. at ¶ 17.

fair and reasonable, it is exceptional.[35]

### 2. Plaintiff's Service Award Is Proper and Reasonable.

Representative Plaintiff seeks a **$2,500.00** service payment (the "Service Award").[36] Courts routinely approve service awards to named plaintiffs in class and collective action litigation, because service awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class."[37] Service awards are meant to "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."[38]

In this Circuit, service awards to representative plaintiffs are "typically justified where the named plaintiffs expend time and effort beyond that of the other class members in assisting class counsel with the litigation, such as by actively reviewing the case and advising counsel in the prosecution of the case."[39] Here, not only was Representative Plaintiff willing to shoulder the burden of being a named plaintiff in a class and collective action lawsuit, he also contributed significant time, effort, and detailed factual information, enabling Plaintiffs' Counsel to evaluate the strength of his case. Representative Plaintiff was also available and provided valuable guidance

---

[35] *Id*. at ¶¶ 22 and 26.

[36] *Id*. at ¶ 23.

[37] *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *21 (S.D. Ohio Dec. 3, 2019) (quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)).

[38] *Id.* (quoting *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *17 (N.D. Ohio Mar. 8, 2010)).

[39] *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997); *see also*, *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

as the Parties were negotiating settlement, and provided Plaintiffs' Counsel with the information they needed to evaluate whether the proposed Settlement was in the best interest of Opt-In Party Plaintiffs.[40] As such, his time and efforts support the requested Service Award. Further, Representative Plaintiff entered in a general release in partial exchange of the Service Award.[41] Notably, Defendant does not object to the requested Service Award.[42]

### 3. The Attorneys' Fees to Plaintiffs' Counsel Are Proper and Reasonable.

After the Court has confirmed that the terms of the Settlement are fair to the Representative Plaintiff and the Eligible Settlement Participants, it may review the Parties' agreement (as outlined in the Settlement Agreement) as to the provision of fees and costs to Plaintiffs' Counsel. The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."[43] In *Fegley v. Higgins*,[44] the Sixth Circuit held that the FLSA's mandatory attorneys' fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights."[45]

---

[40] Baishnab Decl. at ¶ 23.

[41] Exhibit C of Settlement Agreement.

[42] Baishnab Decl. at ¶ 23.

[43] 29 U.S.C. § 216(b).

[44] 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied*, 513 U.S. 875 (1994).

[45] *Id*. at 1134–35 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.*, 732 F.2d 495, 502–03 (6th Cir. 1984)).

A. Plaintiff's Reduced Fee Request.

The Settlement originally provided for Defendant paying Plaintiffs' Counsel one-third of the Global Settlement Fund, or $75,000.[46] And as this Court has held, an award of one-third "is typical for attorney's fees in common fund, FLSA collective actions in this District" and is "the most appropriate method for determining reasonable attorneys' fees in wage and hour cases." *Hebert v. Chesapeake Operating, Inc.*, No. 2:17-cv-852, 2019 U.S. Dist. LEXIS 160792, at *4, and 21-22 (S.D. Ohio Sep. 20, 2019) (J. Morrision) (quoting *Swigart v. Fifth Third Bank*, 2014 U.S. Dist. LEXIS 94450, at * 14-15 (S.D. Ohio July 11, 2014)). Additionally, as proffered in Plaintiff's Supplemental filing, "[a]bsent compelling reasons to the contrary," courts apply the percentage method in wage and hour cases, "as it best reflects FLSA's employee-protection objective." (citing *Dewald v. Time Warner Cable Inc.*, No. 16-cv-1129, 2021 U.S. Dist. LEXIS 32459, at *16 (S.D. Ohio Feb. 16, 2021) (internal quotations omitted). "[T]he percentage approach encourages efficiency, judicial economy, and aligns the interests of the lawyers with the class," *Estate of McConnell v. EUBA Corp.*, No. 3:18-cv-00355, 2021 U.S. Dist. LEXIS 92836, at *15 (S.D. Ohio May 17, 2021) (citing *In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d 752, 762 (S.D. Ohio 2007). "[W]hile the lodestar approach incentivizes attorneys to work more hours, without regard to the quality of the output or the class's needs, the percentage approach instead 'rewards counsel for success and penalizes it for failure." *Id.*

However, the Court held the requested fees to be unreasonable.[47] Specifically, the Court held that fees of $75,000, which comports with a 2.76 multiplier is "well outside" the multipliers

---

[46] Baishnab Decl. at ¶ 24.

[47] ECF No. 26 at PAGEID #: 187.

between 2.01 and 2.57, approved in this District.[48] In Plaintiff's July 12th Supplement to the Parties' Original Joint Motion, Plaintiff identified a number of cases in which multipliers of 2.9, 3.06, and 5.29 have been approved.[49]

Accordingly, and in the interest of obtaining relief to the Eligible Settlement Participants, Plaintiffs' Counsel's requested fees have been reduced to **$69,836.96**, which is 31% of the total fund and a multiplier of 2.57,[50] which the Court has identified as an acceptable multiplier.[51] The difference between Plaintiffs' original fee request ($75,000) and current fee request ($69,836.96) -- $5,163.04, shall be added to the amounts payable to Settlement Class Members.[52]

B.  The *Ramey* Factors Are Satisfied.

The requested reduced fees continue to meet all of the six *Ramey* factors, for the same reasons outlined in Plaintiff's supplemental filing.[53] *Hebert*, 2019 U.S. Dist. LEXIS 160792, at *12 (citing *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974).

---

[48] *Id.* citing (*Thorn v. Bob Evans Farms, Inc.*, No. 2:12-cv-00768, 2016 U.S. Dist. LEXIS 195207, at *2 (S.D. Ohio Feb. 25, 2016) (McCann King, M.J.) and *Swigart v. Fifth Third Bank*, No. 1:11-cv-88, 2014 U.S. Dist. LEXIS 94450, at *18 (S.D. Ohio July 11, 2014).

[49] ECF No. 25 at PAGEID #: 170 (citing *Estate of McConnell*, 2021 U.S. Dist. LEXIS 92836, at *19-20 (multiplier of 2.9) (also citing *Lowther v. AK Steel Corp.*, No. 1:11-cv-877, 2012 U.S. Dist. LEXIS 181476, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (approving a 3.06 multiplier and citing cases that found multipliers ranging from 4.3 to 8.5 to be reasonable); and *Arp v. Hohla & Wyss Enters.*, LLP, No. 3:18-cv-119, 2020 U.S. Dist. LEXIS 207512, at *19 (S.D. Ohio Nov. 5, 2020) (approving lodestar multiplier of 5.29)).

[50] Baishnab Decl. at ¶ 24.

[51] ECF NO. 26 at PAGEID #: 187.

[52] Baishnab Decl. at ¶ 24.

[53] ECF No. 25 at PAGEID #: 169-172.

First, the value of the benefit rendered to the class is exceptional. The total settlement amount equals approximately 9 minutes of unpaid time per day, for 100% of the alleged unpaid overtime, plus 26% liquidated damages at three years or 85% liquidated damages at two years. With 100% participation, settlement would result in an approximate average payment of more than $939 per individual. The total settlement amount also reflects nearly twice the calculated expected value as determined by Plaintiffs' Counsel.[54] Further, the Court held that "[t]he fairness factors therefore weigh in favor of approval."[55]

Second, the value of the services on an hourly basis is reasonable. As outlined in Plaintiff's Supplemental filing, Plaintiffs' Counsel's effective hourly rate was $331 as of the June 15, 2021, which is when the Parties' original Joint Motion was filed.[56] This rate is within those applicable in previously approved settlements for Plaintiffs' Counsel by this Court and the Northern District of Ohio. *See e.g.*, *Van Buskirk v. Cardington Yutaka Technologies, Inc.*, Case No. 2:19-cv-00557, Dkt. Nos. 11 and 12 (S.D. Ohio) (J. Smith); *Smith, et al., v. CHS Employment Services, LLC*, Case No. 2:17-cv-01077, Dkt. Nos. 22-23 (S.D. Ohio) (J. Graham); and *Miller et al v. Shearer*, Case No. 5:19-cv-00924, Dkt. Nos. 23 and 24 (N.D. Ohio) (J. Adams).

Also attached to Mr. Baishnab's Declaration, as Exhibit A, is a Declaration from attorney Anthony Lazzaro that our "rates are within the fair and reasonable market value for services

---

[54] EF No. 23 at PAGEID #: 107, ¶ B.1.

[55] ECF No. 26 at PAGEID #: 183.

[56] ECF No. 25 at PAGEID #: 169.

rendered in wage and hour litigation and are within the range of customary and usual charges for representation in such litigation by attorneys with their qualifications."[57]

Third, Plaintiffs' Counsel accepted this case on a contingent fee basis and advanced all litigation fees, costs and expenses.[58] As this Court has recognized, "Class Counsel's work does not end at final approval. Class Counsel frequently spend additional time, sometimes significant time, dealing with class members' inquiries, administration issues, and other post-approval matters." *Estate of McConnell*, 2021 U.S. Dist. LEXIS 92836, at *19. Plaintiffs' Counsel will not be paid for post-settlement work, including responding to class inquiries and effectuating settlement.[59]

Fourth, society's stake in approving the requested fees is important to maintain an incentive to others. For example, if not settled collectively, approximately 9 individuals would have to obtain counsel and seek judicial remedies for 2-year unpaid overtime of less than $30, and approximately 40 individuals would need to prove willfulness to obtain a third-year of damages because they otherwise had zero 2-year unpaid overtime.[60] Through the present settlement, all of these individuals get a pro rata share of 100% of 3-years alleged unpaid overtime, plus 26% liquidated damages. Not only do many get substantial relief by operation of collective efforts, but all 143 Eligible Settlement Participants are entitled to settlement payments with the legal fees and

---

[57] *See* also Baishnab Decl. at ¶ 29 and Exhibit A to Baishnab Declaration, Lazzaro Decl. at ¶ 13. *See also* Baishnab Decl. at ¶ 28. To address the Court's questions as to rates and positions, Mr. Baishnab provides in his attached Declaration the names, positions, and rates to supplement the previously submitted itemized itemization. *See* ECF No. 26 at PAGEID #: 186 ("The supplemental materials provide only names and not positions for those who worked on the case, making it impossible for the Court to determine if the charged hourly rates are reasonable.").
[58] ECF No. 23 at PAGEID #: 110.

[59] Baishnab Decl. at ¶ 24.

[60] *Id*. at ¶ 22.

litigation costs of one lawsuit, swiftly brought to resolution without the potentially eclipsing costs and unavoidable uncertainty of continued litigation.

Fifth, though the Parties reached early resolution, the litigation was complex, and unfortunately, much of the work that Counsel for both sides puts in to prosecuting and defending matters, while effectively moving them to swift resolution often does not perfectly mirror the low-cost results obtained. At issue was alleged unpaid pre-shift work and allegations of working through unpaid lunches.[61] Should litigation had continued; the Parties would have engaged in significant and costly discovery. Not only would Plaintiffs' Counsel have to visit the location, but expert time studies would be expected if trial was unavoidable. For example, expert analysis would be used to assess pre-shift work, lunch-time work, walking, and waiting time.[62]

In preparation for mediation, Named Plaintiff provided Plaintiffs' Counsel with a detailed key and map of the approximate locations of badge readers, charging stations, break room, and approximate walking distances of Defendant's sizable warehouse. However, while such evidence was pivotal in mediation, experts would be needed to prove Plaintiff's claims at trial. As stated in Plaintiffs' Counsel's supporting Declaration, expert time-studies can potentially cost upwards of $50,000.[63]

Sixth, both sides were represented by skilled and respected counsel. As outlined in Plaintiff's supporting Declaration, Plaintiffs' Counsel currently has one of the largest wage and hour collective action practices in the State of Ohio, and litigates wage and hour cases in other

---

[61] ECF No. 23 at PAGEID #: 93.

[62] Baishnab Decl. at ¶ 25.

[63] *See also Id*., fn. 3 (For example, in a simple donning and doffing case that settled after mediation, an *informal* expert rebuttal costs approximately $6,800, and a formal time study was estimated to cost upwards of $50,000).

jurisdictions across the country.[64] The firm has been expressly recognized by Courts for its ability to litigate wage hour and hour cases.[65] Likewise, Defendant's Counsel has broad employment litigation experience, has presented on employment matters many times, has published works including on the FLSA, has been quoted by the media, and has numerous honors and awards.[66]

### 4.      The Court Should Authorize Reimbursement of Expenses.

The Court should approve reimbursement of the expenses in this case. Plaintiffs' Counsel's current litigation costs are **$3,818.05**. Costs incurred to date by Plaintiffs' Counsel include: Court filing fee and service; postage; and engagement of the Economist to build a damages model.[67] "Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement."[68] In fact, "[e]xpense awards are customary when litigants have created a common settlement fund for the benefit of a class."[69]

---

[64] ECF No. 23-2 at PAGEID #: 153, ¶¶ 10.

[65] *Id*. at PAGEID #: 154, ¶ 12 ("Our firm enjoys a positive reputation for its ability to litigate wage and hour cases. *See¸ White v. Premier Pallet & Recycling, Inc.*, Case No. 5:18-cv-1460, 2018 U.S. Dist. LEXIS 174414, *6 (N.D. Ohio, Oct. 10, 2018)("[C]lass counsel is abled and experienced in FLSA collective actions, litigating over one hundred cases since February 2014"); and *Lackie v. U.S. Well Servs.*, No. 2:15-cv-695, 2017 U.S. Dist. LEXIS 28920, at *6-7 (S.D. Ohio Mar. 1, 2017) (Chief Mag. J. Deavers); *adopted and affirmed Lackie v. U.S. Well Servs.*, No. 2:15-cv695, 2017 U.S. Dist. LEXIS 34720 (S.D. Ohio Mar. 10, 2017) (J. Smith)(recognizing that Nilges Draher LLC has "extensive experience litigating FLSA and other wage-and-hour claims....").

[66] https://ogletree.com/people/john-gerak/ (last viewed 7/12/2021).

[67] Baishnab Decl. at ¶ 27.

[68] *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, *20 (S.D. Ohio Nov. 25, 2019) (further citation omitted).

[69] *Id.*

Because these costs are reasonable and were incurred in the prosecution of Representative Plaintiff's claims, the Court should award Plaintiffs' Counsel reimbursement of these costs and expenses from the Global Settlement Fund.

IV.   <u>**CONCLUSION**</u>

For the forgoing reasons, the Parties request that this Court enter the Order, attached hereto

as **Exhibit 3**:

1. Approving the Parties' Settlement Agreement and its Exhibits A through C, attached hereto as **Exhibit 1**;

2. Approving the requested Service Award to Representative Plaintiff Grant Wachtelhausen;

3. Approving Plaintiffs' Counsel's requested attorneys' fees and costs;

4. Retaining jurisdiction over the Action to enforce the terms of the Settlement Agreement; and

5. Dismissing this matter with prejudice.

Respectfully submitted,

**NILGES DRAHER LLC**

/s/ *Robi J. Baishnab*
Robi J. Baishnab (0086195)
34 N. High Street, Ste. 502
Columbus, Ohio 43215
(614) 824-5770
(330) 754-1430 (Fax)
rbaishnab@ohlaborlaw.com

Hans A. Nilges (0076017)
Shannon M. Draher (0074304)
7266 Portage Street, NW, Suite D
Massillon, Ohio 44646
(330) 470-4428
(330) 754-1430 (Fax)
sdraher@ohlaborlaw.com
hans@ohlaborlaw.com

*Attorneys for Plaintiffs*

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**

/s/*John Gerak (with permission)*
John Gerak (0075431)
Key Tower, 127 Public Square
Suite 4100
Cleveland, OH 44114
Telephone: 216-274-6917
john.gerak@ogletree.com

Michael D Ray *(admitted pro hac vice)*
201 South College Street, Suite 2300
Charlotte, NC 28244
Telephone: 704-405-3133
Michael.ray@ogletree.com

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 16, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

<u>*/s/ Robi J. Baishnab*</u>
Robi J. Baishnab

*Counsel for Plaintiffs*